**Affirmed and Memorandum Opinion filed February 6, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00145-CV

---

### BAYLOR COLLEGE OF MEDICINE, Appellant

### V.

### XL INSURANCE AMERICA, INC. AND ACE AMERICAN INSURANCE COMPANY, Appellees

---

**On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2020-53316-A**

---

## MEMORANDUM OPINION

Appellees are insurance companies that denied coverage to appellant, Baylor College of Medicine, for losses caused by the presence of the virus that causes COVID-19 on Baylor's properties. The trial court granted appellees' motion for summary judgment, ruling that Baylor's losses fall within the scope of a Pollution and Contamination Exclusion in each policy. Baylor challenges the trial court's summary judgment on this ground. We affirm.

## I. BACKGROUND

Baylor and appellees entered into all-risks insurance policies that covered "direct physical loss of or damage to property." The policies included a Pollution and Contamination Exclusion (the Exclusion):

> This Policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of Contaminants or Pollutants, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this Policy.
>
> . . . .
>
> Contaminants or Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances listed in the Federal Water, Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U.S. Environmental Protection Agency. . . .

Baylor alleges in its petition that it suffered direct physical loss of or damage to property due to the COVID-19 pandemic. Baylor alleges that it was required to close some of its operations and dramatically reduce other operations when COVID-19 "persisted and continued to spread in the community." Baylor claims damages resulting from "the physical presence of the virus on [Baylor]'s insured property and rapid community spread."

When Baylor submitted a claim to appellees for business interruption caused by the pandemic, appellees denied the claim, contending (1) there was no direct physical loss or damage to covered property; and (2) the Exclusion applied.

2

Baylor sued appellees, among others, for various claims related to the denial of coverage.

Appellees filed a motion for summary judgment, urging the same grounds it had relied upon in denying Baylor's claims. The trial court granted the motion and rendered a judgment for appellees, ruling that "any loss or damage caused by, resulting from, contributed to, or made worse by COVID-19 falls within the scope of the [Exclusion]." The court dismissed Baylor's claims with prejudice. After the trial court severed Baylor's claims against appellees, the judgment became final, and Baylor appealed.

## II.    ANALYSIS

In its second issue,[1] Baylor contends that the trial court erred by granting summary judgment based on the Exclusion. Baylor contends that the Exclusion is ambiguous because a virus is not a "pollutant or contaminant," as the phrase is used in the Exclusion, and the ambiguity must be resolved in favor of coverage.

### A.    Legal Principles

Courts interpret insurance policies like any contract, and the primary concern is to ascertain the intentions of the parties as expressed in the document. *See RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). The language of the contract is the best representation of what the parties intended. *Id.* Unless the policy dictates otherwise, we give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage. *Id.*

---

[1] Baylor contends in its first issue that the trial court "correctly denied summary judgment on the 'direct physical loss' ground." We do not reach this issue because of the disposition of Baylor's second issue. *See* Tex. R. App. P. 47.1.

3

If an insurance contract is ambiguous, we must resolve the uncertainty by adopting the construction that most favors the insured. *Id.* Whether a contract is ambiguous is a question of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

An ambiguity does not arise merely because of a lack of clarity in language or because the parties offer conflicting interpretations. *RSUI*, 466 S.W.3d at 119. A contract is ambiguous only if it is subject to two or more reasonable interpretations. *Id.* Thus, we must determine whether Baylor's construction of the contract is a reasonable one. *See id.*

## B.    Application

Baylor's interpretation of the Exclusion is that "bacteria, virus, or other hazardous substances" are not examples or types of "Contaminants or Pollutants," as that term is defined in the policy. Baylor contends that the phrase "bacteria, virus, or other hazardous substances" is intended to list "examples only of the types of damage to human health or property that could be occasioned by the release of an excluded pollutant or contaminant."

The ninety-eight-word sentence defining "Contaminants or Pollutants" is not a model of clarity. But the lack of clarity alone does not create an ambiguity. *See RSUI*, 466 S.W.3d at 119. The initial list of examples of contaminants or pollutants ("including smoke, vapor, soot" etc.) is interrupted by a clause (beginning with "which can cause") that adds additional information about the types of contaminants or pollutants that are included in the definition. Although the structure of this sentence indicates the clause is nonrestrictive because it is preceded by a comma, reading the clause in context suggests a restriction is intended—that is, an excluded contaminant or pollutant must be capable of causing or threatening "damage to human health or human welfare or . . . damage,

4

deterioration, loss of value, marketability or loss of use to property insured hereunder." *Compare* The Chicago Manual of Style 5.202, at 230 (15th ed. 2003) ("*[W]hich* is used nonrestrictively—not to narrow a class or identify a particular item but to add something about an item already identified. *Which* should be used restrictively only when it is preceded by a preposition. Otherwise it is almost always preceded by a comma, a parenthesis, or a dash." (examples omitted)), *with Stewman Ranch, Inc. v. Double M. Ranch, Ltd.*, 192 S.W.3d 808, 812–13 (Tex. App.—Eastland 2006, pet. denied) (reasoning that a clause beginning with "which" was restrictive because it would be superfluous otherwise).

Following this clause, the sentence continues, "including, but not limited to, bacteria, virus, or hazardous substances" listed in various federal statutes. This phrase indicates a non-exhaustive list. *Cf.* Tex. Gov't Code § 311.005 (regarding statutory interpretation, "including" is a "term[] of enlargement and not of limitation nor exclusive enumeration").[2]

As commonly understood, "bacteria, virus, or hazardous substances" are not themselves types of "damage to human health or property." Rather, "bacteria, virus, or hazardous substances" are things that can "cause or threaten damage to human health or human welfare." A virus can be "the ***causative agent*** of an infectious disease" and can "***cause*** various important diseases." *Virus*, Webster's Third New International Dictionary 2556 (1993) (emphasis added). Bacteria need not be—indeed, often are not—a cause or type of "damage," though bacteria are capable of causing damage. *See Bacterium*, Webster's Third New International Dictionary 161 (1993) (noting that bacteria are "important to man because of their chemical effects . . . and as pathogens"). The only reasonable interpretation of the

---

[2] *See generally Wash. Square Fin., LLC v. RSL Funding, LLC*, 418 S.W.3d 761, 767 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("Questions of contract construction are reviewed in much the same way as questions of statutory construction.").

Exclusion is that "bacteria, virus, or hazardous substance" are listed as additional types of pollutants or contaminants because they are capable of causing or threatening damage to human health or human welfare.

Quoting the definition of a "virus," Baylor contends that a virus cannot be a pollutant or contaminant because a virus is not a "solid, liquid, gaseous or thermal" irritant or contaminant. Regardless of whether a virus can be classified strictly as solid, liquid, gaseous or thermal, the Exclusion identifies "virus" as a type of contaminant or pollutant, as described above. Thus, Baylor's contention is unconvincing.

Baylor also contends that it has not alleged that the virus has been "released, discharged, escaped or dispersed"—only that the virus is "physically present" on its property. Baylor alleges in its petition, however, that its claims arose because the virus "spread in the community" to become present on its property. "Disperse" means "to cause or become spread widely." *Disperse*, Webster's Third New International Dictionary 653 (1993). Thus, Baylor's claims are for "loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened . . . dispersal" of the virus, as required by the Exclusion.

Finally, Baylor contends that the "best evidence" that the Exclusion does not apply here is that the appellees amended their policies for the following coverage period to specifically exclude communicable diseases. Baylor acknowledges that courts may not consult extrinsic evidence to create an ambiguity—to contradict or vary the meaning of the explicit language of the contract. *See URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 765 (Tex. 2018); *RSUI*, 466 S.W.3d at 137. Only when the surrounding circumstances reveal and ambiguity about the intent embodied in the contract's language may courts use extrinsic evidence to evaluate the parties' intent. *See URI*, 543 S.W.3d at 765.

Here, there is no ambiguity. The Exclusion identifies "virus" as a type of pollutant or contaminant for which there is no coverage. Baylor cites to no authority to suggest that courts should consider subsequent contracts between the parties to alter the unambiguous language of a prior contract, and we find none. We cannot create an ambiguity by consulting extrinsic evidence. *See URI*, 543 S.W.3d at 765, *RSUI*, 466 S.W.3d at 137. Regardless, even consulting the subsequent policies' new exclusions shows that the exclusions are broader and exclude coverage for losses caused by pathogens other than viruses and bacteria.[3] Thus, nothing in the subsequent exclusions undermines the conclusion that the parties had agreed to exclude coverage for losses caused by a virus under the Pollution and Contamination Exclusion.

The trial court did not err by rendering a summary judgment for the appellees based on the Exclusion. Baylor's second issue is overruled.

## III. CONCLUSION

Having overruled Baylor's issue necessary to the disposition of the appeal, we affirm the trial court's judgment.

/s/    Ken Wise
             Justice

Panel consists of Justices Wise, Zimmerer, and Poissant.

---

[3] One policy excludes coverage for "communicable diseases," defining the term as "any illness, sickness, infection, condition, or disorder caused, in whole or in part, by any direct or indirect contact with or exposure to any virus, parasite, or bacteria or any disease-causing agent of any nature regardless of the method of transition, contact or exposure." The other excludes loss from any "virus, bacteria or other microorganism that induces or is capable of including physical distress, illness or disease."

7